Good morning and good day to the court. My name is Michael Wright. I represent the Department of Contest Promotions, LLC, and with court's permission, I'd like to reserve five minutes for rebuttal. This case arises out of the City's application of former Section 602.3 of the Planning Code to Contest. Just as a brief note, Section 602.3 has been recodified as part of Section 602, the recodification is without change. So, with court's permission, I'll continue to refer to it as Section 602.3. Yes, that's fine. There's a good deal of debate in the papers about whether a constitutional standard stricter than central citizen applies to this statute, and while we believe that even after the issue is still alive under Reed v. County of Gilbert, Arizona, but what I'd like to focus on is Contest's argument that Section 602.3 is unconstitutional under central citizen. That's really my focus. Contest conducts in-store, raffle-style contests, where it gives away prizes to people who come in into the store and funds the forms. Contest advertises those contests with signs that advertise the prizes that are available, sort of things like movie tickets. Yes, that is interesting. It's the main focus of the signs, though, isn't it? Well, the signs depict the, for example, if there's a film in there. No, it's actually, yes or no question, is that the main focus of the signs? Yes, you're right. I thought it was just a small thing at the top, and the sign was about the movie or the Coca-Cola or whatever. Well, that's what I meant. It is. There's an accurate picture of the type of sign on the second page of City Springs, and it has, in the order, it says, come in and win this prize, and then the bulk of the sign is devoted to something else. Yes, the bulk of the sign is devoted to something else, and I think there was evidence that sometimes the prize was rising at their premises. Is it my distinction about that? Well, you're certainly not on this record, because we are, right now we are at the meeting stage, and so the allegations and the complaints should be taken as true. That's right. There are many of these signs. I can tell you for absolute certain that has never happened on this record, and I think you're entitled to know that allegations of a complaint taken as true. Just to be clear, so this was a 12-8-6 poster before the district court, right? Yes, it was, Your Honor. Now, these, some typical sign will have a border on it that says, come in to, let's say, Yick's Lickers, and then the bulk of the sign will advertise the prize. So if it's a movie ticket, it'll be a poster about the movie. If it's a video game, it'll be a poster about the video game. But when you say it's about the prize, though, really it's about advertising the product, right? I was actually slightly confused by this, but I thought the prize was a copy of the poster. Yes, in some cases it is, and in some cases it's the actual poster itself. So that's not, I'm not sure, it seems misleading to say that this whole sign is about the prize. It's not about getting the poster, it's about seeing the movie or buying the product, or the video game, isn't it? It is about the prize or a related product. But perhaps I can answer that question by saying that these parties have already litigated whether this is an on-sign or an off-sign sign, and resolved that litigation under terms into their settlement agreement, which is in the record, in the city's Supplement Life Services record of 521 through 533. I was quite confused about your comments in your brief about the settlement agreement, because it seemed at times like you were trying to make a contract claim that somehow they violated the settlement agreement, but then I didn't think that was really what the claim is that you're pursuing this case. You brought up the bridging contract case. Part of this case is in state court. And that's not before us, right? What's before this court is the First Amendment part of the constitutional aspect of the case. What happened was that the contest originally joined its state law contract-based claims and its constitutional claims before the district court. And the district court dismissed the federal claims in alibi with prejudice, and dismissed the other claims under its discretionary powers to not exercise supplemental jurisdiction. So that part of the case was over in state courts. But the reason I point to the settlement agreement is not to say that we want to outlaw it, we want to engage in breach issues here, but to say that these parties, as between them, have already resolved the issue of whether these are on-site or off-site signs in the settlement agreement. They've litigated that issue for five years. Yeah, now I'm confused about what the point is then. Do you contest that your partner didn't mean that? Do you dispute that the signs actually violate Section 602.3? We do in the sense that that's a non-constitutional claim. Well, we argue that the problem with our signs, and the saying that's on page 30 that's briefed, that our signs are, that the messages on our signs are suitable for inclusion in the business of it. So that's not an answer to my question, because it seems to me you either have to argue that your signs fall within Section 602.3 so that we never would breach any constitutional claims, or you have to, it seems to me, say, no, the city is right about that, and so we have to look at whether Section 602.3 is a permissible regulation. So I'm trying to figure out how we settled that fits into that constitution. I would answer that kind of question. Our signs don't qualify to be the primary message on a plot. Okay, so they violate the ordinance, or not violate, they don't come within the permission of the ordinance, regardless of the settlement agreement. That's right. Okay, so I don't understand, then, what the relevance is of the settlement agreement. I thought Judge Friedland's point was going to, is this an off-site sign that is banned by something other than Section 602.3? No, I meant to be asking the same question. The problem with our signs, our on-site business signs, the problem is our, they primarily advertise something that is not on the site. The problem with our signs is they don't occupy enough area inside the store to qualify as the primary message on the sign. And that's what I was trying to get to in terms of what does Section 602.3 do. One of the things it does is it preserves at least two-thirds of the sign for a message that relates to the business, commodity, industry, service, et cetera, that occupies the greatest area inside the store. And that's the on-site, off-site distinction that our court has upheld many times. So how are you arguing that we pull apart from our precedent on that? Your Honor, that's not the criteria. That's not the criteria that keeps our signs out. Our signs don't qualify as primary sign, as the primary message, simply because they don't occupy enough area inside the store. But that is a way of defining on-site, off-site. So it's to avoid gamesmanship. Isn't that all it is? It's a new way to understand off-site, on-site so you can set games up. Well, with respect to that question, that's part of the relevance of the settlement agreement. The parties litigated that question for five years, and they settled it on terms that recognized contest signs as on-site business signs. So you settled it by the statute. We did, but not because our signs are off-site signs. No, they're on. You're trying to be an on-site sign, but you don't qualify under the regulations. They're on-site signs because our contest paraphernalia or contest materials are not the biggest use inside the store. And the constitutional problem in Section 602.3 is that whether our contest materials took up 99% of the store or 0.1% of the area inside the store is totally irrelevant to the effect that a message with a sign relating to that in-store use has on safety anesthetics. It has absolutely no relevance to that. But that same argument would apply to say there's no difference for safety anesthetics to on-site or off-site at all. I mean, the reason they have the rule about how much space it needs to take up in the store and the main purpose of the store is to really enforce the on-site rule. So I think when you start to say, well, there's no difference for aesthetics, that's the same argument that has been out, that we have disagreed with as a court in all of the on-site and off-site cases. There are two ways that one can file Section 602.3. One is if the sign is off-site. We have resolved that issue with the city, and the city admits that our signs are on-site signs. The second way you can be excluded by Section 602.3 is if your on-site activity is on-site. It's normal because the majority of it is really off-site, even though a lot of it is on-site. The entirety of the content of the contest materials are on-site. When you go in, there's a place. Right, but most of the sign is about why you should see the movie or play the video game. Most of the sign is about the prize, and sometimes the prizes are on-site. That's true. But, again, these guys have the prize, but it's not the prize. It's the product. The product is the movie. You're not going to get the whole movie franchise by going into the store. You're going to get a ticket for them to see the movie, and that's what's being advertised. I suppose they could put up a picture of the movie ticket. But usually what one does is portray the prize attractively, and even though the prize may be a ticket to the movie, the experience of the movie is being portrayed in the movie poster. I have another question, which is a little bit of a different topic. In the complaint, in the operative complaint, there's a lot of time and space devoted to saying other people are violating these rights, too, and you have pictures and all of that. What's the relevance of that? I mean, it seems to me that's a little bit like a kid coming home and saying, you know, I took candy from the store, but all my friends are doing it, too. I guess I don't really understand why that's relevant. Your Honor, that went to allegations about the class fund, whether we were being singled out, but by the city hasn't attempted to get around the settlement agreement. And, again, what that agreement did is it didn't get it. Is that an issue on appeal? I really didn't want to assume it was an issue on his payment. Your Honor, it's certainly not one that I would like to go into with the limited time that I have. Well, no, no. I'm asking whether it's an issue. Yes. Yes. Okay. Equal protection. Okay. So, I acknowledge that your subsidiary unit has been making a selective enforcement claim in the district court, but not on your briefs here. She said it better than I did, but that's where I was getting at. I would agree with that, Your Honor. The focus of our – well, the argument is there, but it's not the focus of – of this. And what the city has done with respect to the area of contention, which is the primary part of the site, is that it has set up a criterion that qualifies a message based on the area that the activity, in our case, the on-site contest, which everyone has agreed is an on-site activity, occupies within the store. And that criterion of the amount of space, the amount of area occupied within the store, is utterly irrelevant to the safety and aesthetics. So, do you have an argument for why we should not view that space rule as a way to enforce the on-site rule? Absolutely. Absolutely. And the reason is that if the city's real goal is to say,  all the city has to do is to say, if your message relates to a product or service or activity on the premises, it's allowed and it's an on-site site. But why can't they say, it matters to us whether it's just something hidden in the drawer that you wrote down and it's basically a thick leaf and the whole store is about something else. I mean, why isn't that a valid thing for the city to do if it really is trying to have an on-site rule? There could be a de minimis or a false connection to the premises that the city could justifiably regulate. But that's one of the reasons I bring up the settlement agreement, is that in this case, these parties have already had that discussion. Well, they've said it's on-site, but they don't talk about de minimis in the settlement agreement. They do, Your Honor. And they do, at least, in papers. What part of the settlement agreement should I look at to see that there's progress and it's not in de minimis? I would suggest that the permit process section, paragraph 2, which allows contest promotions to apply for permits. You did that and you were denied the permits? We were denied permits because our signs don't, because our signs say that the primary message is about the prize and that kind of content is not fit as the primary message because our contest materials don't occupy enough area within the store. That's the problem that we have. But as far as there being a legitimate connection between the on-site activity and our signs, we've already litigated that and settled it with the city and resolved it on terms that our signs qualify as business signs. The problem is we cannot qualify as the primary message because we don't occupy enough area within the store. Thank you, Counselor. You've exceeded your time. I will give you a minute for about a hundred seconds. Thank you, Counselor. So I guess one of the questions that you'll be addressing is what's on a bill? What is before this body based upon the decision that we just heard? Yes, Your Honor, Deputy City Attorney Jack Emery for the City and County of San Francisco. I'm here to please the Court. The issues on appeal are the First Amendment issue that Counsel was discussing and focusing on. Also on appeal is an equal protection claim but not the class of one argument which was… Selective enforcement. Selective enforcement, which was not mentioned in the opening brief. And the San Francisco point set out in its opposition brief that that argument, although presented in history… And there's a due process being mis-argument and a substitutive process argument as well, as we understood it. That's right. Okay. So what do you mean by the equal protection claim? You said there is an equal protection claim but not the class of one. So what do you think is the equal protection claim? They say that this is connected to the First Amendment claim that because a fundamental right is involved that there must be strict certainty. So I'm not sure I agree with you that they didn't mention the class of one claim. So in my head, the class of one claim is a little different than the selective prosecution or selective enforcement claim. I don't see them making a selective enforcement claim but they do seem to inform page 47 of the blue brief to talk about the class of one claim. When you said they hadn't done that, I was a little bit confused by that. If it hasn't been waived then it fails because it hasn't been adequately planned as the district court… Did you have a substantive response to the class of one claim? We do. As in our brief, there's a substantive response. The district court properly determined that with respect to the class of one claim that the plaintiff did not identify anyone else similarly situated to the plaintiff. That all those other situations that are in the amended complaint that the court asked about with solicitor right, that those people were not similarly situated. So a class of one claim I thought was a claim that their client is being targeted just because of the actions it has taken in the public sphere to advocate for something or to try to do something. So I thought their claim was because we tried to do this settlement or something, you targeted your amendments to the ordinance at us specifically. If we construe the class of one claim to be more in the nature of that, do you have a response to that? But the… I haven't thought about that. I'm sorry. Because the idea that there aren't similarly situated people I think goes more to selective prosecution or selective enforcement, which I agree with you. I don't think they are making that. I think you have said they're not all the same, and they seem to not even be arguing that all those other people are the same anymore. They seem to have dropped that point. But I did think they were still making an argument that the city has somehow targeted this ordinance at them in particular in some sort of unfair way. I don't think that the allegations and the judicially eligible facts, meaning the ordinance itself supports that. What you see in the ordinance, which was amended after the settlement agreement, is that the city updated the ordinance, removed the language other than incidentally, which is similar to the de minimis issue that came up during the argument before today. The district court had identified the other than incidentally language in the previous version, 602.3, to be potentially vague, to deny the city's policy motion on the vagueness around the original lawsuit, the one that was filed in 2009. And so the city was responding to that. I don't think there's any way that a court could infer that the amendment of the ordinance was unfairly directed against this plaintiff. So if I paraphrase what needs to be fair to say, there's nothing unfair about clarifying the ordinance in a way that deals with the problems you saw the city to be facing, even if they're the only ones doing the problem. That doesn't make it irrational. You're trying to deal with a science problem, whether it's one person doing the science or more than one person doing the science. Absolutely. And if one person shows the way and is profitable, other people will follow. I'd like to ask you to address the relevance of the settlement agreement, because opposing counsel has spent a lot of time on that emphasis, saying that regardless of what Metro Media defines as on-site sign or anybody else, these are on-site signs, period. Because the settlement says so. What is your response to that? First, that the breach of contract claim, as Mr. Wright described, is before the Superior Court, and that is pending in the Superior Court. The settlement agreement does not affect what the language of the ordinance is, and the constitutional question is, is 602.3 valid or not under the First Amendment? And so we have to look at that, look at the definitions in that. Judges' promotions has acknowledged straightforwardly today that its signs do not comply with 602.3. And if you want to understand what the settlement agreement did, which is irrelevant to this constitutional question, but the settlement agreement did not acknowledge that there are signs or on-site signs. It said that if the prize had a particular connection to what was depicted outside on the sign, that that would be an on-site sign. So in other words, if it were the grocery store, and what they were giving away was a bag of groceries, would the lucky holder of the winning ticket or whatever that would be opened in his offices? No. I would say that what the settlement agreement identified is the connection between the depiction and the prize. If that is sufficient as described in the settlement agreement, then the sign is depicting an on- and on-site activity, and the sign qualifies as an on-site sign if it satisfies every single requirement of 602.3. Right. Well, I guess I was visualizing the sign, and perhaps your whole thing was about groceries. Sure. And they said, and by the way, you might want a bag of groceries when you get inside. And that would be compliant with 602.3. Also what would be compliant with 602.3 is if the sign for the Batman video game outside the liquor store identified, yes, we have a raffle going on that's going on inside the store, and if that activity, that particular product that is being advertised occupies less than one-third of the sign so that it is integrated. The 602.3 also requires that the discussion of particular items that are for sale by brand, if they're identified and take up less than one-third and are integrating with the sign for the grocery store, if that is okay. The integration requirement is an important aspect of this, not just the one-third. So how will the Batman video game ever work in the liquor store? I guess I'm confused by the example. Yes. Well, it's the only example we have on the record. It seems hard to see how it will ever work in a store that's mostly selling alcohol. Exactly. Exactly. And that's not what is contemplated by 602.3, something totally different. As the court suggested earlier today, if you look at that sign, the video game sign, there's no way it is serving the function of an on-site sign, which is to identify to the public where the business is, come here and buy liquor, buy groceries. Which is more or less what Venture Media deferred to the on-site sign to be. Exactly. Exactly. And so we are faced with the genius-ness of the billboard company, San Francisco, has updated its sign and defined the on-site sign to serve the purpose of an on-site sign. Oops. So the integration requirement is important too because, as I said, because C-cell's purpose of the on-site sign, you can say the liquor store sells Coca-Cola, you can say the liquor store sells a particular brand of cheese, but the integration requirement requires that the message be, come to the store and you can get the cheese. It's not, look, buy cheese wherever you want to buy it, go to the movie wherever you want to go. The purpose of the on-site sign is to come into the store. So the trial judge decided the 1286 motion, granting it with prejudice, so deciding as a matter of law. That's correct. After a chance to amend it. And so you're giving us, you're asking us to affirm that. Absolutely right. Because as a matter of law, what? But if you look at 602.3, it defines on-site and off-site signs. And under Metro Media, 35 years of 9th Circuit precedent, the on-site, off-site distinction satisfies Central Henson and satisfies First Amendment. I think that is a very similar case. If there are no further questions, I say we'll wrap this event. Thank you, Mr. Wright. You may have one minute. Thank you, Your Honor. With respect to whether this type of sign is the kind of sign that qualifies as an on-site business sign, again, I've asked the court to keep a look at the settlement agreement because these parties have already litigated that for five years and resolved it. So we're not enforcing the settlement agreement here, right? No, but the city is bound by it. At this stage of the case, on the pleadings, instead of getting our case thrown out on the pleadings, we're entitled to prosecute our version of what the settlement agreement says. But he's entitled to a conclusion, an inferential conclusion, whether it's on-site or off-site. If it's a legal conclusion, then we're not bound by what the parties say. Well, if the settlement agreement is not binding, then? No, it may be binding in terms of contract law, but when it comes to interpreting the law and saying, does this ordinance deal with on-site, off-site, or something else, then it's something for us to decide regardless of what the parties think, isn't it? The way the parties stipulate and the parties are bound independently, I mean, the way they settle an issue, we're at least entitled to present our side of that. So I'm back to being totally confused why you're talking about this because you acknowledge that your sides don't comply with the ordinance and it seems like you're challenging the ordinance because of that. So now you're back to saying the settlement says we do comply with the ordinance. There are two ways that you cannot comply with this ordinance. One, you can have an off-site side. So I think we are using on-site to mean both parts of the ordinance, both the thing that it has to be about something going on in the store and it has to take up enough of the store. At least in my head, both of those are related to on-site. I think you're fighting that as you keep saying, well, we're on-site, but that's not the point. The point is, does this ordinance allow your sides? And I think you agree it doesn't. And at that point, I'm not sure the settlement matters. Well, it does because we have alleged and the city has admitted on page 30 of their brief, the city admits that the Batman logo is appropriate for display on business signs. Only if it takes up enough square footage of the business, which we don't. Now, Your Honor, what the city is saying is that it's appropriate as long as it's placed on the accessory part of the sign. Remember that Selection Point 3 divides the sign into two areas, primary message for the use that takes up the greatest area, accessory message for anything else that's on-site. The city concedes on page 30 of their brief that the Batman video game pictures on the newspaper side, all of our headline, qualifies as a message that's appropriate on that accessory part of the sign. But that's not where you put it. You put it in the middle of the sign. Here's the pictures of Batman. And our problem is that we want to put it on as the primary message. So the city has conceded your message is an on-site sign. It's suitable for display on a business sign in the city. The problem is you can't put your message as the primary message because your contest materials don't take up enough area inside the store. And what we're saying is that whole criterion of how much space a use occupies inside the store, whether it's 1% or 99%, is totally irrelevant to the safety and aesthetics effects that that sign has. I think it's absolutely irrelevant. You've exceeded your time by quite a bit, and I think we do understand your argument on this case. So we'll submit this particular case, but you can stay there because I think in this case under advisement we're ready for the next pair. And number 17-15213 is submitted on the briefs of the record, but we don't hear argument in number 17-15909, which colloquially we refer to as case number three in Oregon.
judges: Graber, Friedland, Marshall